# EXHIBIT C

## MARSH & MCLENNAN AGENCY LLC
## NON-SOLICITATION AND CONFIDENTIALITY AGREEMENT

This Non-Solicitation and Confidentiality Agreement ("Agreement") is between Marsh & McLennan Agency LLC (the "Employer"), together with its parents and affiliates (collectively, the "Company"), and **Rachel Murray** employee of the Employer (the "Employee").

R E C I T A L S:

This Agreement between the Company and Employee is entered into in consideration of the Employee's (a) employment or continued employment by the Employer, (b) eligibility to participate in certain bonus compensation plan(s) of Employer if required under such plan and/or its terms and conditions, and (c) access to Confidential Information and Trade Secrets belonging to the Company, as defined below.

NOW, THEREFORE, for good and sufficient consideration as set forth herein the Employer and the Employee hereby agree to be bound by this Non-Solicitation Agreement, as follows:

1. **Non-Solicitation Of Clients**

(a) Employee acknowledges and agrees that solely by reason of employment by the Company, Employee has and will come into contact with and develop and maintain relationships with a significant number of the Company's clients and prospective clients, and will have access to Confidential Information and Trade Secrets relating thereto, including those regarding the Company's clients, prospective clients and related information, and will have access to and the benefit of good will developed by Company with its clients.

(b) Consequently, Employee covenants and agrees that in the event of separation from employment with the Company, whether such separation is voluntary or involuntary, Employee will not, for a period of two (2) years following such separation, directly or through others: (i) solicit clients or prospective clients of the Company for the purpose of selling or providing products or services of the type sold or provided by Employee while employed by the Company; (ii) induce clients or prospective clients of the Company to terminate, cancel, not renew, or not place business with the Company; (iii) perform or supervise the provision or performance of services or projects or provision of products of the type sold or provided by Employee while he or she was employed by the Company on behalf of any clients or prospective clients of the Company; or (iv) assist others to do the acts specified in Sections 1(b) (i)-(iii). This restriction shall apply only to those clients or prospective clients of the Company with whom Employee had contact or about whom Employee obtained Confidential Information and Trade Secrets during the last two (2) years of his or her employment with the Company or its

predecessors.  For the purposes of  Section 1, the term "contact" means interaction between Employee and the client which takes place to further the business relationship, or making (or assisting or supervising the performance or provision of) sales to or performing or providing (or assisting or supervising the performance or provision of) services, products or projects for the client on behalf of the Company.  For purposes of Section 1, the term "contact" with respect to a "prospective" client means interaction between Employee and a potential client of the Company which takes place to obtain the business of the potential client on behalf of the Company.  It shall not be a defense to a claim that this Section has been breached that Employee's new employer or entity for which Employee is performing services has previously solicited or served the client.  Employee shall not engage in any subterfuge to circumvent this prohibition, including, but not limited to accompanying others on calls to the client, contacting the client with other persons, supervising other persons in soliciting or serving the client, providing Confidential Information and Trade Secrets to others to assist them in soliciting or serving the client, participating in developing presentations to be made to the client, or other similar activities.

2.      **Non-Solicitation Of Employees**

Employee acknowledges and agrees that solely as a result of employment with the Company, and in light of the broad responsibilities of such employment which include working with other employees of the Company, Employee has and will come into contact with and acquire Confidential Information and Trade Secrets regarding other employees of the Company, and will develop relationships with those employees.  Accordingly, both during employment with the Company and for a period of two (2) years thereafter, Employee shall not, either on Employee's own account or on behalf of any person, company, corporation, or other entity, directly or through others, solicit, or endeavor to cause any employee of the Company with whom Employee, during the last two (2) years of his or her employment with the Company, came into contact for the purpose of soliciting or servicing business or about whom Employee obtained Confidential Information and Trade Secrets, to leave employment with the Company.

3.      **Conflict Of Interest**

Employee may not use his or her position, influence, knowledge of Confidential Information and Trade Secrets or the Company's assets for personal gain, except as specifically provided in this Agreement.  A direct or indirect financial interest, including joint ventures in or with a supplier, vendor, client or prospective client without disclosure and the express written approval of the President or highest executive officer of Employer is strictly prohibited and constitutes cause for dismissal.

4.      **Acknowledgement of Confidential Nature of Work and Related Definitions.**

(a) Employee understands and acknowledges that: (i) as an employee of the Company he or she will learn, be provided with an access to, and may assist in the development of, highly confidential and sensitive information and trade secrets about the Company, its operations and its clients, all of which belong to the Company; and (ii) providing its clients with appropriate assurances that their confidences will be protected is crucial to the Company's ability to obtain clients, maintain good client relations, and conform to contractual obligations.

DocuSign Envelope ID: 8087CCE3-AC5D-4573-B91A-D6200DF1F15E

(b) For the purposes of this Agreement, "Confidential Information and Trade Secrets" are items of information relating to the Company, its products, services, clients, suppliers, vendors, business partners, and employees that are not generally known or available to the general public, but have been developed, compiled or acquired by the Company at its effort and expense. Confidential Information and Trade Secrets can be in any form, including but not limited to: verbal, written or machine readable, including electronic files. Trade secrets are items of Confidential Information that meet the requirements of applicable trade secret law. The absence of any marking or statement that any particular information is Confidential Information or trade secret shall not affect its status as Confidential Information or trade secret. Confidential Information and Trade Secrets include but are not limited to: (i) financial and business information relating to the Company, such as information with respect to costs, commissions, fees, profits, sales, markets, mailing lists, strategies and plans for future business, new business, product or other development, potential acquisitions or divestitures, and new marketing ideas; (ii) product and technical information relating to the Company, such as product formulations, new and innovative product ideas, methods, procedures, devices, machines, equipment, data processing programs, software, software codes, computer models, and research and development projects; (iii) client information, such as the identity of the Company's clients, the names of representatives of the Company's clients responsible for entering into contracts with the Company, the amounts paid by such clients to the Company, specific client needs and requirements, specific client risk characteristics, policy expiration dates, policy terms and conditions, information regarding the markets or sources with which insurance is placed, and leads and referrals to prospective clients; (iv) personnel information, such as the identity and number of the Company's other employees and officers, their salaries, bonuses, benefits, skills, qualifications, and abilities; (v) any and all information in whatever form relating to any client or prospective client of the Company, including but not limited to, its business, employees, operations, systems, assets, liabilities, finances, products, and marketing, selling and operating practices; (vi) any information not included in (i) or (ii) above which Employee knows or should know is subject to a restriction on disclosure or which Employee knows or should know is considered by the Company or the Company's clients or prospective clients to be confidential, sensitive, proprietary or a trade secret or is not readily available to the public; (vii) Intellectual Property (as defined below); or (viii) Copyrightable Works (as defined below).

(c) For purposes of this Agreement, "Intellectual Property" shall include, but not be limited to, all inventions, designs, specifications, formulations, products, discoveries, articles, reports, models (computer or otherwise), processes, methods, frameworks, methods of analysis, systems, techniques, trademarks, service marks, names, trade secrets, concepts and ideas, the expressions of all concepts and ideas, creations, work product or contributions thereto, computer programs, software, data processing systems, improvements, and all modifications and developments with respect to the foregoing, and know-how related thereto, whether or not any such Intellectual Property is eligible for patent, trademark, copyright, trade secret or other legal protection, and regardless of whether containing or constituting Confidential Information and Trade Secrets as defined in this Section 4.

(d) For purposes of this Agreement, "Copyrightable Works" means any Intellectual Property subject to copyright protection as defined by the U.S. Copyright Act, 17 U.S.C. § 102 including, but not limited to, catalogs, directories, factual, reference or instructional works, literary and dramatic works, pictorial, musical and graphic works, motion pictures and

DocuSign Envelope ID: 8087CCE3-AC5D-4573-B01A-D6200DF1F15E
Case 1:24-cv-09914-MKV    Document 1-3    Filed 12/23/24    Page 5 of 11

Page 4

other audiovisual works, sound recordings, architectural works and compilations of data, computer data bases and computer programs.

5.      **Nondisclosure of Confidential Information and Trade Secrets**

(a) Employee acknowledges and agrees that the Company is engaged in a highly competitive business and that its competitive position depends upon its ability to maintain the confidentiality of the Confidential Information and Trade Secrets which were developed, compiled and acquired by the Company at its great effort and expense. Employee further acknowledges and agrees that any disclosing, divulging, revealing, or using of any of the Confidential Information and Trade Secrets, other than in connection with the Company's business or as specifically authorized by the Company, will be highly detrimental to the Company and cause it to suffer serious loss of business and pecuniary damage. Accordingly, Employee agrees that he or she will not, while associated with the Company and for so long thereafter as the pertinent information or documentation remains confidential, for any purpose whatsoever, directly or indirectly use, disseminate or disclose to any other person, organization or entity Confidential Information and Trade Secrets, except as required to carry out his or her duties as an employee of the Company, and except as expressly authorized by the President or highest executive officer of the Employer. Employee understands that nothing in this Agreement is intended to prohibit him or her from discussing with other employees, or with third parties who are not future employers or competitors of the Company, wages, hours, or other terms and conditions of employment.

(b) Employee understands that under the federal Defend Trade Secrets Act of 2016, s/he shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (i) is made (a) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (b) solely for the purpose of reporting or investigating a suspected violation of law; or (ii) is made to Employee's attorney in relation to a lawsuit for retaliation against Employee for reporting a suspected violation of law; or (iii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(c) Employee further understands that nothing contained in this Agreement limits Employee's ability to (i) file a charge and/or complaint or participate in a proceeding with the Equal Employment Opportunity Commission, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission, and/or any other federal, state, or local governmental agency or commission (collectively, the "Government Agencies"); or (ii) exercise Employee's rights under Section 7 of the National Labor Relations Act to engage in protected or concerted activity with other employees. Employee also understands that this Agreement does not limit his/her ability to communicate with any Government Agencies or otherwise participate in any investigation or proceeding that may be conducted by any Government Agencies, including providing documents or other information, without notice to the Company. In addition, this Agreement does not limit Employee's right to receive any award, monetary payment, and/or financial incentive from any Government Agencies (and not the Company) for information provided to said Government Agencies.

Page 5

**6.     Return of Materials Upon Termination of Employment**

(a) Immediately upon the termination of my employment with the Company for any reason, or at any time the Company so requests, Employee will return to the Company:

i. any originals and all copies of all files, notes, e-mail, documents, slides (including transparencies), computer disks, printouts, reports, lists of the Company's clients or leads or referrals to prospective clients, and other media or property in your possession or control which contain or pertain to Confidential Information and Trade Secrets;

ii. all property of the Company, including, but not limited to, supplies, keys, access devices, cellphones, laptops, iPhones, iPads, books, identification cards, computers, telephones and other equipment; and

iii. all passwords, passcodes, security PINs, biometrics, and/or any other information or means necessary for the Company to access property of the Company stored on any device or equipment, in writing.  You further agree not to take any action (such as wiping or deleting) at any time with respect to any electronic devices that would hinder the access of information by the Company.  For any equipment or devices owned by Employee on which proprietary information of the Company is stored or accessible, Employee shall, immediately upon or prior to separation from employment, deliver such equipment or devices to the Company so that any proprietary information may be deleted or removed.  Employee expressly authorizes the Company's designated representatives to access such equipment or devices for this limited purpose and shall provide any passwords or access codes necessary to accomplish this task.

(b) Employee agrees that upon his or her completion of the obligations set forth in subsection 6a, paragraphs i. and ii. above and if requested by the Company, Employee will execute a statement declaring that he or she has retained no property of the Company or materials containing Confidential Information and Trade Secrets nor has he or she supplied the same to any person, except as required to carry out his or her duties as an employee of the Company. A receipt signed by a Human Resources officer of the Company itemizing the returned property is necessary to demonstrate that Employee has returned all such property to the Company.

**7.     Proper Use of Technology**

Employee acknowledges and agrees that Employee is not authorized to access and use the Company's computer systems and protected computers, including laptop computers and Company PDA's, and the data contained therein, for personal gain or to benefit third parties (other than in the course of Employee's performance of services for the Company or as expressly and specifically authorized by the Company) and that any such access or use is unauthorized and may be punishable by law as well as constituting a breach of this Agreement.

**8.     Assignment of Rights to Intellectual Property; Ownership of Copyrightable Work**

*General – June 2019*

Page 6

      (a) Employee hereby assigns, and agrees to assign, to the Company all present and future right, title and interest in and to any Intellectual Property conceived, discovered, reduced to practice and/or made by Employee during the period of time that Employee is employed by the Company (whether before, on or after the date of this Agreement), whether such Intellectual Property was conceived, discovered and/or reduced to practice and/or made by Employee solely or jointly with others, on or off the premises of the Company's business, or during or after working hours, if such Intellectual Property: (i) was conceived, discovered, reduced to practice and/or made with the Company's facilities, equipment, supplies, Confidential Information and Trade Secrets; or (ii) relates to the Company's current, potential or anticipated business activities, work or research; or (iii) results from work done or to be done by Employee or under his or her direction, alone or jointly, for the Company. Employee further acknowledges and agrees that such Intellectual Property as referred to herein belongs to the Company and that the Company may keep such Intellectual Property and/or processes pertaining thereto, whether patented or copyrighted or not, as Confidential Information and Trade Secrets and make all decisions regarding whether and how to use such Intellectual Property and/or processes. Employee further agrees not to use or seek any commercial exploitation of or otherwise use any Intellectual Property required to be assigned under this Agreement for personal use.

      (b) Employee acknowledges, agrees, and intends that all Copyrightable Works he or she creates during the period of time that he or she is employed by the Company (whether before, on or after the date of this Agreement) and within the scope of his or her employment shall be considered to be "works made for hire" as defined under the U.S. Copyright Act, 17 U.S.C. §§ 101 et seq. Employee also acknowledges, agrees, and intends that the Company will be deemed the author of all such works made for hire and the owner of all of the rights comprised in the copyright of such works.

      (c) Employee agrees that he or she will (i) promptly disclose such Intellectual Property and Copyrightable Works to the Company; (ii) assign to the Company, without additional compensation, the entire rights to Intellectual Property and Copyrightable Works for the United States and all foreign countries; (iii) execute assignments and all other documentation and do all acts necessary to carry out the above, including enabling the Company to file and prosecute applications for, acquire, ascertain and enforce in all countries, letters patent, trademark registrations and/or copyrights covering or otherwise relating to Intellectual Property and Copyrightable Works and to enable the Company to protect its proprietary interests therein; and (iv) give testimony in any action or proceeding to enforce rights in the Intellectual Property and Copyrightable Works.

      (d) Employee understands and agrees that: (i) no license or conveyance of any rights or warranty is granted or implied by the Company furnishing or disclosing any Intellectual Property or Copyrightable Works to Employee; and (ii) the Company shall retain whatever ownership and other proprietary rights it otherwise has in all Intellectual Property and Copyrightable Works.

Page 7

9. **Employee's Acknowledgment**

Employee hereby expressly acknowledges and agrees that (a) the restrictions and obligations set forth in and imposed by Sections 1, 2, 3, 4, 5, 6, 7 or 8 will not prevent Employee from obtaining gainful employment in Employee's field of expertise or cause Employee undue hardship; and (b) the restrictions and obligations imposed on Employee under Sections 1, 2, 3, 4, 5, 6, 7 or 8 are necessary to protect the legitimate business interests of the Company and are reasonable in view of the benefits and consideration Employee has received or will receive from the Company.

10. **Equitable Relief**

(a) In recognition of the fact that irreparable injury will result to the Company in the event of a breach by Employee of his or her obligations under Section 1, 2, 3, 4, 5, 6, 7 or 8 of this Agreement, that monetary damages for such breach would not be readily calculable, and that the Company would not have an adequate remedy at law therefor, Employee acknowledges, consents and agrees that in the event of such breach, or the threat thereof, the Company shall be entitled, in addition to any other legal remedies and damages available, to (i) specific performance thereof and to temporary and permanent injunctive relief (without the necessity of posting a bond) to restrain the violation or threatened violation of such obligations by Employee and persons acting for or in connection with Employee and (ii) recovery of all reasonable sums and costs, including attorneys' fees, expert witness fees, expenses and costs incurred by the Company in investigating or seeking to enforce the provisions of this Agreement.

(b) The restrictive periods set forth in this Agreement (including those set forth in Sections 1, 2 and 5 hereof) shall not expire and shall be tolled during any period in which Employee is in violation of such restrictive periods, and therefore such restrictive periods shall be extended for a periods equal to the durations of Employee's violations thereof.

11. **Severability**

The parties agree they have attempted to limit the scope of the post-employment restrictions contained herein to the extent necessary to protect Confidential Information and Trade Secrets, client relationships and good will. It is the desire and intent of the parties that the provisions of this Agreement shall be enforced to the fullest extent permissible under applicable laws and public policies. Accordingly, if any particular portion of this Agreement shall be adjudicated to be invalid or unenforceable, this Agreement shall be deemed amended to delete therefrom such invalid portion, and reformed to the extent valid and enforceable. Such deletion and reformation shall apply only with respect to the operation of this Agreement in the particular jurisdiction in which such adjudication is made.

12. **Other Agreements and Obligations Survive**

(a) Neither Employee nor the Company intends to waive or release the applicability of any other more extensive legal or contractual obligations Employee may owe the

*General – June 2019*

Page 8

Company at any particular time, including, but not limited to, obligations under any employment agreement between Employee and the Company, whether executed prior to this Agreement or at any time hereafter, with regard to the subject matters of Sections 1, 2, 3, 4, 5, 6, 7 or 8.

(b) Except as otherwise provided in this Section, the obligations of Employee under this Agreement shall be independent of, and unaffected by, and shall not affect, other agreements, if any, binding Employee which apply to Employee's business activities during and/or subsequent to Employee's employment by the Company, including any employment agreement between Employee and the Company executed at any time hereafter. The obligations under this Agreement also shall survive any changes made in the future to the employment terms of Employee, including but not limited to changes in salary, benefits, bonus plans, job title and job responsibilities.

13. **Employment Unaltered**

Employee understands that this Agreement does not constitute a contract of employment and does not promise or imply that his or her employment with the Company will continue for any period of time. Unless otherwise agreed to under any employment agreement between Employee and the Company, whether executed prior to this Agreement or at any time hereafter, employment with the Company is "at-will" and may be terminated either by Employee or the Company at any time, with or without cause, and with or without notice.

14. **Binding Effect; Assignment**

Employee expressly consents to be bound by the provisions of this Agreement for the benefit of the Company or any of its subsidiaries or affiliates to whose employ he or she may be transferred without the necessity that this Agreement be re-signed at the time of such transfer. Employee consents that any such subsidiary or affiliate may enforce this Agreement. Further, the rights of the Company hereunder may be assigned, without consent of Employee, at any time, to any successor in interest of the Company, or any portion thereof, by reason of merger, consolidation, sale, lease or other disposition of any or all of the assets or stock of the Company. This Agreement may be enforced by the Company's successors and assigns.

15. **Governing Law and Choice of Forum**

The parties acknowledge that the Company is headquartered in New York, that senior members of the leadership team of the Company are based in New York, and that breach of this Agreement will cause injury in New York. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to its conflict of laws provisions. The parties, being desirous of having any disputes resolved in a forum having a substantial body of law and experience with the matters contained herein, agree that any action or proceeding with respect to this Agreement and Employee's employment shall be brought exclusively in the Civil Court of the City of New York, New York County, or in the Supreme Court of the State of New York, New York County, or in the United States District Court for the Southern District of New York, or in any other court of competent jurisdiction in or for the State and County of New York, and the parties agree to the personal jurisdiction thereof. The parties

*General – June 2019*

DocuSign Envelope ID: 8087CCE3-AC5D-4573-B01A-D6290DF1F15E
Case 1:24-cv-09914-MKV    Document 1-3    Filed 12/23/24    Page 10 of 11

Page 9

hereby irrevocably waive any objection they may now or hereafter have to the laying of venue of any such action in the said court(s), and further irrevocably waive any claim they may now or hereafter have that any such action brought in said court(s) has been brought in an inconvenient forum. Employee recognizes that, should any dispute or controversy arising from or relating to this Agreement be submitted for adjudication to any court, arbitration panel or other third party, the preservation of the secrecy of Confidential Information and Trade Secrets may be jeopardized. Consequently, Employee agrees that all issues of fact shall be tried without a jury.

16.     **Non-Waiver**

The failure of either the Company or Employee, whether purposeful or otherwise, to exercise in any instance any right, power, or privilege under this Agreement or under law shall not constitute a waiver of any other right, power, or privilege, nor of the same right, power, or privilege in any other instance. Any waiver by the Company or by Employee must be in a written or electronic instrument signed by either Employee, if Employee is seeking to waive any of his or her rights under this Agreement, or by the President or highest executive officer of Employer, if the Company is seeking to waive any of its rights under this Agreement.

17.     **Modification; Agreement to Enter into Additional Agreements**

No modification of this Agreement shall be valid unless made in a written or electronic instrument signed by both parties hereto, wherein specific reference is made to this Agreement, except as provided in Section 11 above; provided, however, that the Company may make changes to the Agreement that are favorable to Employee (*e.g.*, to conform the provisions of this Agreement to changes in court decisions or legislation), without securing the written consent of Employee to the change. Should Employee move to a different state or jurisdiction while employed by the Company or upon written request of the Company, Employee agrees to sign, without further consideration, upon direction by the Company, such further writings to effectuate the provisions of this Agreement as necessary to comply with applicable law. Employee's failure to sign such additional agreements shall constitute a breach of this Agreement.

18.     **Cooperation**

Both during Employee's employment with the Company and after the termination thereof for any reason, Employee agrees to provide the Company with such information relating to his or her work for the Company or others, as the Company may from time to time reasonably request in order to determine his or her compliance with this Agreement.

19.     **Disclosure**

For a period of two (2) years after termination of employment with the Employer, Employee agrees to provide his or her new employer with a copy of this Agreement prior to taking a position with such new employer. Employee also hereby specifically authorizes the Company to contact his or her future employers to determine his or her compliance with the Agreement or to communicate the contents of this Agreement to such employers. Employee

*General – June 2019*

DocuSign Envelope ID: 8087CCE3-AC5D-4573-B01A-D6290DF1F15E
Case 1:24-cv-09914-MKV   Document 1-3   Filed 12/23/24   Page 11 of 11

Page 10

further specifically authorizes the Company to, in its sole discretion and without further permission from Employee, furnish copies of the Agreement to any client or prospective client of the Company and indicate that Employee has entered into this Agreement with the intention that the Company and each of its clients or prospective clients may rely upon his or her compliance with this Agreement.

**20.** **Headings**

Section headings are used herein for convenience or reference only and shall not affect the meaning of any provision of this Agreement.

By: *Amanda Vail*
Name: Amanda Vail
Title: EVP, Chief Operating Officer

Signed and agreed to by:

*Rachel Murray*
—DocuSigned by:
—91492DECD5654F1...

EMPLOYEE (signature)                    3/20/2024 | 08:43 PDT
                                        DATE

Rachel Murray

EMPLOYEE (print name)