# EXHIBIT E

EFiled: Jul 14 2022 01:26PM EDT
Transaction ID 67822085
Case No. 2019-0226-JTL

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| MOUNTAIN WEST SERIES OF LOCKTON COMPANIES, LCC (formerly known as DENVER SERIES OF LOCKTON COMPANIES, LLC) and LOCKTON PARTNERS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ALLIANT INSURANCE SERVICES, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) C.A. No. 2019-0226-JTL ) ) ) ) ) ) ) |

### ORDER DENYING IN PART AND GRANTING IN PART
### SECOND MOTION FOR CONTINUED CONFIDENTIAL TREATMENT

1. On March 22, 2019, Mountain West Series of Lockton Companies, LLC, and Lockton Partners, LLC (jointly, "Lockton") filed this action against Alliant Insurance Services, Inc. ("Alliant"). Dkt. 1. Lockton filed suit after twenty-six members of Lockton's Denver office resigned *en masse* and joined Alliant. *Id.* ¶¶ 5–7.

2. Lockton moved for a preliminary injunction, and the parties filed briefs in support of that motion. *See* Dkt. 215; Dkt. 227; Dkt. 240 (collectively, the "Injunction Briefs"). On June 20, 2019, the court issued a decision granting Lockton's motion. *See Mountain W. Series of Lockton Co., LLC v. Alliant Ins. Servs., Inc.*, 2019 WL 2536104 (Del. Ch. June 20, 2019). The court found it reasonably probable that Alliant induced top business leaders from Lockton's Denver office to breach their obligations to Lockton and to recruit other Lockton employees to join Alliant. *Id.* at *3–18. The court found it was reasonably likely that Alliant, through its counsel, had manufactured litigation positions

regarding the restrictive covenants binding Lockton employees. *Id.* The court determined that Alliant had waived attorney-client privilege on certain documents through "credibility-impairing behavior." *Id.* at *18 & n.6. On January 8, 2020, the parties reached a settlement, and the action was dismissed with prejudice. Dkt. 273.

3. Non-party Arthur J. Gallagher & Co. ("Gallagher") is currently suing Alliant in multiple jurisdictions. Dkt. 297 ¶ 5. On March 7, 2022, Gallagher filed a Notice of Challenge to Confidential Treatment pursuant to Court of Chancery Rule 5.1(f). Dkt. 277. In response to that notice, Alliant filed redacted versions of dozens of exhibits to the Injunction Briefs. On May 20, 2022, Gallagher filed a second Notice of Challenge to Confidential Treatment (the "Second Notice"), which challenges redactions in sixty-three of those exhibits. *See* Dkt. 300 Ex. A. On June 6, 2022, Alliant filed a Motion for Continued Confidential Treatment (the "Second Motion"). Dkt. 303. The Second Motion seeks to preserve the confidential treatment of redactions in fifty-nine of the sixty-three exhibits. *See* Dkt. 303 Ex. A.

4. The redactions in dispute fall into two categories: (1) business and financial information relating to Alliant and its employees (the "Business Redactions") and (2) personal information of Alliant employees and their spouses, such as cell phone numbers and email addresses (the "Personal Redactions"). Dkt. 303 ¶ 6.

5. "The public's right of access to judicial records has been characterized as fundamental to a democratic state." *ADT Hldgs., Inc. v. Harris*, 2017 WL 4317245, at *1 (Del. Ch. Sept. 28, 2017) (cleaned up). Court of Chancery Rule 5.1 reflects the court's commitment to the principles of public access. *Horres v. Chick-fil-A, Inc.*, 2013 WL

1223605, at *2 (Del. Ch. Mar. 27, 2013). Rule 5.1 states, "[e]xcept as otherwise provided" in the Rule, "proceedings in a civil action are a matter of public record." Ct. Ch. R. 5.1(a). This language makes clear that most information presented to the court should be available to the public. *Sequoia Presidential Yacht Gp., LLC. v. FE P'rs LLC*, 2013 WL 3724946, at *2 (Del. Ch. July 15, 2013).

6. As the party seeking to maintain confidential treatment Alliant "bears the burden of establishing good cause for Confidential Treatment." Ct. Ch. R. 5.1(b)(3). Under Rule 5.1(b)(2) "good cause" exists "only if the public interest in access to Court proceedings is outweighed by the harm that public disclosure of sensitive, non-public information would cause." Ct. Ch. R. 5.1(b)(2). As examples of categories of information that may qualify for confidential treatment, Rule 5.1(b)(2) identifies "trade secrets; sensitive proprietary information; sensitive financial, business, or personnel information; sensitive personal information such as medical records; and personally identifying information such as social security numbers, financial account numbers, and the names of minor children." *Id.*

7. "Denial of access to litigation material must be approached from the premise that court restraint should not be imposed unless strong justification exists for such action." *Ramada Inns, Inc. v. Drinkhall*, 490 A.2d 593, 598 (Del. Super. 1985). "Those who decide to litigate in a public forum (rather than pursue a private dispute-resolution procedure) must do so in a manner consistent with the right of the public to follow and monitor the proceedings and result of their dispute." *Al Jazeera Am., LLC v. AT&T Servs., Inc.*, 2013 WL 5614284, at *7 (Del. Ch. Oct. 14, 2013); *see Manhattan Telecomms., Corp. v. Granite*

*Telecomms., LLC*, 2020 WL 6799122, at *2–3 (Del. Ch. Nov. 19, 2020) (discussing powerful presumption of public access).

8. When determining whether to support or maintain a restriction on access, a Delaware court balances "the magnitude and imminence of harm to the litigants" with "the interests of the government and public in disclosure." *Ramada Inns*, 490 A.2d at 599. Even if restraint is justified, "[it] should be so restricted to impose no greater restraint than is necessary to afford the [rule's] protection." *Id.*

9. The party seeking confidential treatment must make a specific showing of harm. "[G]eneric statements of harm are insufficient to overcome the public right of access: harm must be particularized to warrant continued confidentiality." *In re Boeing Co. Deriv. Litig.*, 2021 WL 392851, at *2 (Del. Ch. Feb. 1, 2021) (cleaned up). The movant "must point to specific information like trade secrets or competitively sensitive pricing information that is not in the public mix and, if disclosed, will cause clearly identified harm." *Id.* (cleaned up). A party must do more than identify "mere potential for collateral economic consequences." *Manhattan Telecomms.*, 2020 WL 6799122, at *3 (cleaned up). It is not enough that the information "could have unfavorable economic or reputational consequences, such as weakened negotiating position or public embarrassment." *Al Jazeera*, 2013 WL 5614284, at *7; *see Paul v. Rockpoint Gp., LLC*, 2021 WL 3262122, at *2 (Del. Ch. July 29, 2021).

10. Once the party seeking confidential treatment has identified a specific harm, the party must show that the specific harm is sufficiently grave to outweigh the public's interest in access. "The public interest is especially strong where the information is material

to understanding the nature of the dispute." *In re Oxbow Carbon LLC*, 2016 WL 7323443, at *2 (Del. Ch. Dec. 15, 2016) (cleaned up); *see Al Jazeera*, 2013 WL 5614284, at *7 (explaining that information bearing on the "core nature of the dispute" is of considerable public interest). When information relates to the nature of the dispute or the individual defendant's motivations, denial of public access to material requires a "strong justification." *Oxbow Carbon*, 2106 WL 7323443, at *3. The public interest is "paramount when the information provided the basis for a judicial decision." *Id.* at *2 (cleaned up).

11. Alliant has failed to establish good cause for maintaining confidential treatment of the Business Redactions. Those redactions concern historical information about events from 2018 involving Alliant, its counsel, and the former Lockton employees. At this point, the information is stale. At the same time, access to the information is critical to understanding the decision in the *Mountain West* case, because it sheds light on Alliant's true motives and intent.

12. Alliant redacted many of the exhibits in their entirety. Exhibits that "are entirely blacked out" are "presumptively not in good faith compliance with Rule 5.1." *GKC Strategic Value Master Fund, LP v. Baker Hughes Inc.*, 2019 WL 2592574, at *5 (Del. Ch. June 25, 2019).

13. Alliant contends that the wholesale redactions are appropriate in part because Alliant only produced the documents once "attorney-client privilege had been waived." Dkt. 303 ¶ 17. According to Alliant, the "inherent importance of the confidentiality of attorney-client communications" dictates that these communications nevertheless remain confidential. *Id.* The court has previously rejected this same argument. *See Oxbow Carbon*,

2016 WL 7323443, at *3 (rejecting continued confidentiality of privileged legal advice that was already disclosed to adversarial parties); *Ashton v. Fetch*, C.A No. 2018-0743-KSJM, at 37–38 (Del Ch. June 26, 2019) (TRANSCRIPT) (rejecting the argument that documents produced after a waiver of attorney-client privilege should be kept confidential as "baseless"). Once privilege was waived, the documents became indistinguishable from any other documents. The exhibits were part of the record presented to the court, and the court relied on them in reaching its decision.

14. Alliant next argues that the Business Redactions are necessary to protect (i) sensitive compensation information and (ii) the positions Alliant took during negotiations over employment terms. Dkt. 303 ¶¶ 12–17. According to Alliant, a competitor in theory could use this information to harm Alliant. *Id.* ¶¶ 13–16.

   a. Alliant's claim of harm is generic and speculative. Therefore, it is unpersuasive. *See Manhattan Telecomms.*, 2020 WL 6799122, at *3. A speculative suggestion of competitive harm "does not overcome the public's presumptive right of access to the materials submitted." *Rockpoint Gp.*, 2021 WL 3262122, at *2; *see Boeing*, 2021 WL 392851, at *4 (rejecting the speculative argument that "competitors could use internal [company] information to harm [the company] in competition").

   b. Equally important, the information in the Business Redactions is stale, and stale information is not entitled to protection. *Baker v. Sadiq*, 2016 WL 4988427, at *2 (Del. Ch. June 8, 2016). The Business Redactions concern Alliant's hiring raid in 2018, some four years ago. While the passage of that amount of time alone is generally sufficient to render documents stale, in this instance the world has changed profoundly in the interim.

In 2018, some two years before the COVID-19 pandemic, the world was a different place. This court has declined to grant protection to similar documents of comparable vintage. *See BCIM Strategic Value Master Fund, LP, v. HFF, Inc.*, C.A No. 2019-0558-JTL, ¶¶ 4–7 (Del. Ch. July 9, 2021) (holding three-year-old documents that addressed transaction-related bonuses as not entitled to continued confidential treatment because they were "issue-specific" and "stale" due to age and changed market conditions); *ADT Hldgs.*, 2017 WL 4317245, at *2 (remarking that agreement terms that were more than four years old did not qualify for continued confidential treatment).

      c.     In addition to not identifying any specific harm, Alliant has failed to point to a type of harm that would outweigh the public right of access. The Business Redactions concern matters at the core of the rationale for the court determining that Alliant's conduct was reasonably likely to be wrongful. Many of the Business Redactions address terms that Alliant sought to use to induce employees to leave Lockton. Alliant has no right to shield tortious strategies from public review. The Business Redactions shed light on Alliant's motive and intent and are important to the public's ability to understand the nature of the dispute and the court's decision. *See Al Jazeera*, 2013 WL 5614284, at *6; *Boeing*, 2021 WL 392851, at *3–4.

15.     In response, Alliant cites a series of inapposite cases. Alliant relies on *Cantor Fitzgerald, Inc. v. Cantor*, 2001 WL 422633 (Del. Ch. Apr. 17, 2001), for the proposition that non-public financial information is entitled to confidential treatment. The *Cantor Fitzgerald* decision indeed contains a statement to that effect, but it pre-dated the court's adoption of Rule 5.1 in 2013. That rule reflects the court's renewed commitment to public

access and sought to make clear that the court only would grant confidential treatment for truly sensitive information when a threat of specific harm outweighed the public's right. *See Al Jazeera*, 2013 WL 5614284, at *3 (explaining that under the prior rule, "too much information was being deemed confidential").

16. Alliant similarly relies on *Hewlett v. Hewlett-Packard Co.*, 2002 WL 32151538 (Del. Ch. Apr. 16, 2002), for generally the proposition that compensation plans should be afforded confidential treatment. *Hewlett* is a pre-Rule 5.1 discovery order governing the production and use of confidential information, analogous to what the court now would enter as a confidentiality stipulation. It contains no analysis of whether specific documents filed with the Court should be afforded continued confidential treatment. Rather, the order includes a procedure for challenging the designations of any purportedly confidential documents. *Id.* at *6. It provides no reason to believe that compensation plans (or terms of compensation) generally qualify for protection under Rule 5.1.

17. Alliant also cites *In re Trust for Gore*, 2011 WL 13175994 (Del. Ch. Dec. 22, 2011), another decision that pre-dated the court's adoption of Rule 5.1. It is also distinguishable in its own right.

    a. The *Gore* decision involved a trust that indirectly held shares of stock of W.L. Gore & Associates, Inc., a successful private company. During the trial, a witness inadvertently gave testimony about the approximate value of the stock held by the Trust, along with information sufficient to calculate a value for Gore as a whole. The trustees promptly moved to seal the record, and the court granted their request. A newspaper reporter subsequently sought to obtain the information. Writing before the revisions to Rule

- 8 -

5.1, the court stated that "[n]onpublic estimates of value of a privately held company are generally entitled to confidential treatment." *Id.* at *2. The court did not require any showing of harm, nor did it conduct a balancing of interests. More recent precedent clearly requires both inquiries. The court also held that knowledge of the value of Gore was not important for the public's understanding of the dispute. *Id.*

        b.      The court reached a different conclusion regarding information that revealed the number of shares in a trust for beneficiaries versus the number of shares in the trust for other beneficiaries. The court found that disclosure of this information would not reveal a valuation of Gore and "would assist the public in understanding the dispute that the Court has been called upon to resolve." *Id.*

        c.      Assuming for purposes of analysis that *Gore* remains a persuasive precedent, the information at issue in this case more closely resembles the share information that the court made public, rather than the valuation information that the court kept confidential. The Business Redactions would not permit anyone to back into a valuation of Alliant, and the information will assist the public in understanding the dispute that the Court was called upon to resolve.

18.      Finally, Alliant cites *Stroud v. Grace*, 606 A.2d 75 (Del. 1992), a decision that also has nothing to do with the right of public access. The *Stroud* case acknowledged that under certain circumstances, a board can condition the release of confidential information to stockholders upon their execution of a confidentiality agreement. *Id.* at 88–89. Primarily citing decisions in books-and-records cases, the court acknowledged the mundane fact that a private company can have an interest in keeping information

confidential. *Id.* at 89. In a far more recent decision, the Delaware Supreme Court has made clear that there is no presumption of confidentiality. *Tiger v. Boast Apparel, Inc.*, 214 A.3d 933, 939 (Del. 2019). Even in a books-and-records action, a company must prove that a confidentiality restriction is warranted. *Id.* The Second Motion does not involve a production in a books-and-records action. It involves the public right of access. Addressing the latter issue, Chief Justice Strine held while serving as a member of this court that the public right of access would override a confidentiality agreement that private parties involved in a dispute over a private company sought to invoke as a basis to keep the record confidential. *Kronenberg v. Katz*, 872 A.2d 568, 608 (Del. Ch. 2004). He rejected the argument that the private parties could turn themselves into "secret citizens" who could "litigate in the courts of public record behind a judicially enforced screen." *Id.* That argument, he explained, confronted "an insuperable barrier" in the form of "the legal duty of the tribunal to honor the legitimate interest of the public and the press in access to judicial proceedings." *Id.*

19.     Much of the Business Redactions detail Alliant's efforts to circumvent restrictive covenants and provide poached employees with indemnification. These portions of the documents shed light on Alliant's "credibility-impairing pattern of behavior." *Mountain W.*, 2019 WL 2536104 at *18. The court relied on the information in rendering its decision. *Id.* at *2–18. The information goes to "the very heart" of the case. *Boeing*, 2021 WL 392851, at *4. It may be embarrassing for Alliant to have the specifics of its conduct brought to light. But embarrassment is not grounds for confidential treatment. *See Sequoia*, 2013 WL 3724946, at *3.

20. Alliant also devotes considerable effort to questioning Gallagher's motives for seeking access. In essence, Alliant seeks to dismiss Gallagher's efforts on the grounds that Gallagher is a business competitor and litigation opponent. Dkt. 303 ¶ 7.

    a. As a rule, the identity of the "party challenging confidential treatment is irrelevant to whether Rule 5.1 applies." *In re Lordstown Motors Corp. S'holders Litig.*, 2022 WL 601120, at *7 (Del. Ch. Feb. 28, 2022). Nothing "in our law obligates [the party] to prove why he seeks access to information filed in a Delaware court, much less that his purpose is somehow 'proper.'" *Manhattan Telecomms*, 2020 WL 6799122, at *5. The fact that a party may seek to use the documents in litigation is largely irrelevant. *See GKC Strategic*, 2019 WL 2592574, at *1. Indeed, rather than calling into question the motives of the party seeking the information, the existence of pending litigation can provide evidence of public interest. *See Al Jazeera*, 2013 WL 5614284, at *5; *Boeing*, 2021 WL 392851, at *3. Here, Alliant faces at least forty-one lawsuits in at least twenty-five jurisdictions in which competitors have asserted similar claims. Dkt. 297 ¶¶ 10–17. The Business Redactions provide insight into Alliant's *modus operandi*. *See* Dkt. 305 ¶ 18. There is plainly a level of public interest in the misconduct in which Alliant engaged.

    b. As part of its effort to disparage Gallagher's motives, Alliant argues that Gallagher only seeks information belonging to Alliant and not information belonging to Lockton. Dkt. 303 ¶ 7. A party seeking information need not be interested in the case as a whole. A party can be interested in aspects of the record. Moreover, in the *Mountain West* decision, this court found that it was reasonably likely that Alliant engaged in tortious

conduct, not Lockton. It is understandable that the public interest principally concerns what Alliant did.

21. Alliant has thus failed to carry its burden for the Business Redactions.

22. By contrast, the Second Motion provides sufficient basis to maintain confidential treatment for the Personal Redactions.

    a. Rule 5.1 acknowledges that protection is warranted for "personally sensitive information involving [an individual's] personal life, such as child custody information, social security numbers, bank account numbers, and other personally identifying information." *Oxbow Carbon*, 2016 WL 7323443, at *4 (cleaned up). As a general rule, the redaction of personal information does not "greatly disadvantage the public's ability to understand the nature of the dispute before this Court." *Al Jazeera*, 2013 WL 5614284, at *7. Gallagher acknowledges these principals and does not seek the disclosure of sensitive personal information. Dkt. 305 ¶ 5 & n.3.

    b. The Personal Redactions satisfy the requirements for confidential treatment. They include personal email addresses, cell phone numbers, and the reasons why an employee was on medical leave. The court did not rely on that specific information in deciding the case.

23. Alliant has failed to establish good cause to maintain the confidential treatment of the Business Redactions. Within five days, Alliant will file unredacted copies of the following exhibits, which will be available for public inspection: JX 1; JX 2; JX 3; JX 4; JX 5: JX 6; JX 10; JX 12; JX 33; JX 34; JX 35; JX 42; JX 51; JX 52; JX 61; JX 66; JX 76; JX 78; JX 79; JX 85; JX 87; JX 88; JX 89; JX 90; JX 101; JX 102; JX 108; JX 109;

JX 110; JX 112; JX 113; JX 114; JX 115; JX 116; JX 117; JX 118; JX 120; JX 124; JX 125; JX 128; JX 129; JX 130; JX 138; JX 156; JX 162; JX 164; JX 223; JX 224; JX 225.

24. Alliant has established good cause for maintaining the confidential treatment of the Personal Redactions. The Second Motion is GRANTED to following exhibits: JX 145; JX 309; JX 310; JX 311; JX 312; JX 315; JX 316; JX 317; JX 318.

25. JX 32 contains a mix of Business Redactions and Personal Redactions. Within five days, Alliant will file a copy of JX 32 that removes the former but retains the latter.

Vice Chancellor Laster
July 14, 2022